UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM T. KIRBY,

                  Plaintiff,          CIVIL ACTION NO. 9-CV-14443

    vs.

                                DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF          MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

                  Defendant.
_____/

REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket nos. 7, 11) be DENIED, Defendant's Motion For Summary Judgment (docket no. 10) be GRANTED and the instant Complaint dismissed.

***

**II.**   **PROCEDURAL HISTORY:**

Plaintiff filed an application for disability and Disability Insurance Benefits and Supplemental Security Income on July 12, 2005 alleging that he had been disabled since May 26, 2005 due to fibromyalgia and Crohn's disease. (TR 75-76, 82). The Social Security Administration denied benefits. (TR 38-44, 447-44). Administrative Law Judge B. Lloyd Blair (ALJ) held a de novo hearing on March 18, 2008 and subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits or Supplemental Security Income because he was not under a disability within the meaning of the Social Security Act at any time from May 26, 2005 through the date of the ALJ's March 18, 2008 decision. (TR 13-24). The Appeals Council

declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 2-4). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.   TESTIMONY AND RECORD EVIDENCE

Plaintiff was 50 years old on the date of the hearing. (TR 453). Plaintiff has a high school education and past work as a tool maker. (TR 67, 80). Plaintiff last worked on May 25, 2005 and his job required constant standing and lifting of tool holders weighing between two pounds and fifteen pounds. (TR 453). On May 25, 2005 Plaintiff reported to the emergency room with complaints of "feeling weird" for the past five days, including a low grade fever and high blood pressure. (TR 292). Plaintiff was discharged the same day for follow-up with his treating physician. The final diagnoses on discharge were chronic left shoulder pain and chronic hypertension. (TR 294). Plaintiff testified that he has chronic fibromyalgia, Crohns' disease, fatty liver disease and he has had three stints placed in his heart. (TR 455, 462).

The record shows that Plaintiff has a history of diagnosed fibromyalgia. In an examination report dated August 29, 2005 Dr. Harshad P. Patel, M.D., noted Plaintiff's 1975 diagnosis of Crohn's disease. (TR 257, 455). A 2006 medical report notes that Plaintiff underwent a bowel resection in 1978. (TR 117). After Plaintiff obtained medicaid, he treated with Ray H. King, M.D., at Townsend Medical Center, for both his fibromyalgia and Crohn's disease. (TR 455). Plaintiff's cardiac treatment during the relevant time period included stenting of the left anterior descending coronary artery and right coronary artery. (TR 104).

Plaintiff testified that he has been treated with physical therapy, nerve blocks and massage therapy and at a pain clinic. (TR 455). He testified that his medications at the time of the hearing were Vicoin, methadone, atenolol, Remeron, Neurontin, Vitron-C, aspirin, Zanaflex, Toradol

2

injections as needed for pain and NitroQuick as needed.  (TR 456). He testified that medications make him sleepy and forgetful.  (TR 456).  In July 2005 Plaintiff reported no side effects from his medications except dizziness from Zanaflex.  (TR 79).  Plaintiff reported that medications stopped his severe migraines but he continues to have pain everywhere else.  (TR 65).

Plaintiff reports that pain prevents him from being active, including pain in his feet and left arm and headaches.  (TR 58, 76).  Plaintiff reported that he lives with his wife, six children and his disabled sister-in-law.  (TR 59).  Plaintiff reported that he cannot sleep due to pain so he takes sleeping pills.  (TR 59).  He reported needing no help with personal care and grooming tasks or remembering his medication and his wife assists him by giving him his pain medication injections. (TR 60).  He maintains a self-described strict diet for his Crohn's disease.  (TR 60).  He can prepare food for himself, like a sandwich but cannot make large family meals.  He can do some laundry depending on his pain level that day.  (TR 60-61).  He reported that he does not perform house or yard work due to pain.  (TR 61).  He goes outside once or twice a day and he is able to drive short distances.  (TR 61, 453).  He shops for groceries and clothing about once per week for approximately one hour.  (TR 61).  At the hearing he testified that he shops for between thirty to forty-five minutes before he sits on a bench or leans on a cart and waits for his wife.  (TR 460).  He is able to handle money and related tasks but reports that pain and medications limit his "clarity of thinking."  (TR 62).  He watches television and reads.  (TR 62).

Plaintiff testified that he sometimes attends his children's school activities and he uses the computer every few months.  (TR 458).  His extended family comes to his house for holidays or special events, Plaintiff attends a ball game once or twice a year, attends church no more than twice a month and attends regular doctors appointments.  (TR 62, 458).  He reports that he would follow written instruction "okay," would follow "easy" spoken instructions and gets along very well with

3

authority figures.  (TR 63-64).

Plaintiff testified that he cannot climb stairs well, he can bend over if he has to and he cannot squat easily.  (TR 459).  Plaintiff testified that the most weight he could lift is probably five pounds, he can stand no more than ten minutes before he has to sit and he can walk approximately the length of a city block before he would have to rest.  (TR 460).  He cannot sit for more than an hour.  (TR 460).   Plaintiff testified that he has about twenty "bad days" a month, where he has a chronic headache or intensified pain.  (TR 461).

The Vocational Expert (VE) testified that Plaintiff's past work as a tool maker was skilled and medium in exertion.  (TR 464).  The ALJ asked the VE to consider an individual who could perform light exertion work further limited to only occasionally using ramps and stairs, stooping, kneeling, crouching or crawling and no using ladders, scaffolds or ropes.  (TR 464).  The VE testified that such an individual could not perform Plaintiff's past work.  The ALJ asked the VE to consider an individual of Plaintiff's age, education and work experience with the aforementioned restrictions.  The VE testified that there are jobs in the region defined as the state of Michigan which such an individual could perform.  (TR 464).  The jobs include small products assembler (unskilled and light with approximately 2,000,000 jobs nationally and 42,000 in the region), processing clerk or marker (unskilled and light with approximately 180,000 nationally and 9000 in the region) and mail clerk (unskilled and light with approximately 120,000 nationally and 4000 in the region).  The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles.  (TR 465).

The VE testified that if Plaintiff's testimony were found truthful in all respects there are no jobs he could perform.  (TR 465).  The VE testified that occasional dizziness and the need to reach for something for support or a hearing loss in one ear could "potentially" affect the small products

assembly position. (TR 466). The VE testified that frequent and unpredictable bowel movements that occurred outside of the usual allowable breaks (three breaks throughout the workday) would potentially preclude the small products assembly position. (TR 466). The VE confirmed that a need for more than three breaks per day would create a "problem with employment." (TR 467).

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff meets the insured status requirements through December 31, 2010, had not engaged in substantial gainful activity since May 26, 2005, the alleged onset date, and suffers from Crohn's disease, fibromyalgia and coronary artery disease with multi-vessel cardiac stenting, he does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 15). The ALJ found that Plaintiff had the residual functional capacity to perform a limited range of light exertion work. (TR 19). The ALJ found that Plaintiff is not able to perform his past relevant work yet he is able to perform a significant number of jobs in the economy and therefore he is not suffering from a disability under the Social Security Act. (TR 23-24).

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

*Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*,  resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

Plaintiff's Social Security disability determination was made in accordance with the five step sequential analysis set forth in 20 C.F.R. sections 404.1520(a)-(g), 416.920(a)-(g).  Plaintiff's arguments primarily relate to Plaintiff's Crohn's disease and resulting symptoms and limitations and pain symptoms.  Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence, the ALJ did not properly weigh the opinions of the treating medical physicians and that the ALJ "completely ignored" limitations resulting from Plaintiff's gastrointestinal issues. (Docket no. 7 p. 11).

**B.**     **Discussion and Analysis:**

**1.**     **Whether Additional Medical Records Are New Evidence Requiring Remand Pursuant To Sentence Six of 42 U.S.C. § 405(g)**

6

Plaintiff in his motion for summary judgment repeatedly refers to a letter from Dr. King dated May 28, 2008, more than two months after the date of the ALJ's decision, and stating Dr. King's belief that Plaintiff is "unemployable." (TR 446). In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Sec'y*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Sec'y*, 974 F.2d 680, 685 (6th Cir. 1993). Furthermore, under 20 C.F.R. section 404.970(b), "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt*, 974 F.2d at 685 (*citing Richardson*, 402 U.S. at 401).

The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) ("Where a party presents new evidence on

7

appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material")(emphasis added)(citations omitted).

Therefore, the Court may not review this evidence except to determine whether the case should be remanded for consideration of the additional evidence. The evidence must be new and material and it must relate to the period on or before the date of the ALJ's hearing decision. Plaintiff has not requested a remand for consideration of this additional evidence. Even after Defendant pointed out in its brief that Plaintiff had not requested remand nor met the burden of showing that remand is warranted, Plaintiff failed to squarely address the issue in his reply brief. (Docket no. 11 p. 3-4).

Plaintiff has not alleged good cause for the failure to present this information prior to the ALJ's decision. Plaintiff has not argued that the May 28, 2008 letter is new or material. The Court notes upon review of the letter that it does not give new information that was not already before the ALJ. The record contains and the ALJ addressed evidence relating to Plaintiff's frequent bowel movements and Crohn's disease. (TR 16-17, 22). The remainder of the allegations in the letter, fatigue and frequent headaches, are otherwise addressed in the record and the decision and Dr. King does not reference specific evidence in support of his statements and his conclusion that Plaintiff is "unemployable at any occupation." (TR 446). Furthermore, Dr. King's May 28, 2008 opinion is not inconsistent with Dr. King's January 2008 opinion, which the ALJ considered.

For these reasons, the Court finds that there is not good cause for the late submission of this letter and the evidence is neither new nor material. Plaintiff has not shown that this evidence requires a sentence six remand. 42 U.S.C. § 405(g).

**2.      Whether the ALJ Properly Considered the Opinions Of The Treating Physician**

8

Plaintiff generally argues that the ALJ is required to accord "substantially" greater deference and weight to a treating physician's opinion than a doctor who has seen Plaintiff only once. Plaintiff in his argument identifies only one opinion which the ALJ failed to properly consider and evaluate, Dr. King's opinion and letter of May 28, 2008. The May 28, 2008 letter was not before the ALJ and is not before this Court, except for the limited purpose set forth above. 42 U.S.C. § 405(g).

Under 20 C.F.R. sections 404.1527(d)(2) and 416.927(d)(2) the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." Walters, 127 F.3d at 529-30. Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). The ALJ is required, however, to give the reasons for the weight he assigned to the treating physician's opinion. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

An examination of the record and the ALJ's opinion shows that the ALJ properly considered all of the evidence of record and explained the weight given to treating physicians' opinions to the extent they were not adopted in full. Dr. King completed a Medical Assessement Of Ability To Do Work-Related Activities (Physical) form on January 15, 2008 in which he indicated that he first saw

Plaintiff on July 14, 1993[1].  (TR 86-69).  The ALJ specifically addressed this form in his decision and explained the weight he assigned to it.   (TR 21-22).  The ALJ pointed out that Dr. King has "repeatedly indicated that the claimant was disabled" and the ALJ correctly concluded that he is not required to adopt the doctor's conclusive opinion that Plaintiff is "disabled" or unable to work.  (TR 21).

The ALJ properly considered whether the opinion was supported by clinical and laboratory diagnostic techniques and whether it was inconsistent with other evidence in the record.  The ALJ found that the doctor likely based his findings on Plaintiff's subjective reports, rather than clinical findings.  This conclusion is supported by the record.  The January 2008 form is blank in both the section where the doctor is asked to identify "supportive clinical or laboratory findings" and in the section in which the doctor is ask to "identify what factors support your conclusions, and which of these factors are objective."  (TR 89).  The form does not even state a supporting diagnosis for the extreme limitations set forth therein.  Where the doctor's opinion is "not supported by the necessary laboratory and clinical finds," his opinion need not be given any special weight.  *Miller v. Sec'ty*, 843 F.2d 221, 224 (6th Cir. 1988) ("a physician's opinion is not conclusive of the ultimate fact of disability); *see also Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (An ALJ does not err in "discounting the inconsistent and unsupported portions of" the treating physician's medical source statement.).

_____

[1]Dr. King opined that Plaintiff can sit only one hour without interruption, can sit a maximum of two hours in an eight-hour day, can stand a maximum of one to two hours and walk one hour in an eight-hour day and can only occasionally lift and carry five pounds.  (TR 87).  The opinion contains additional restrictions to only occasional grasping, no fine manipulation, only occasional pushing of ten pounds with either hand and no use of feet and legs for repetitive movements.  (TR 87).  The only postural activity which Plaintiff is not precluded from performing is occasional stair climbing.  (TR 88).  Environmental restrictions are similarly severe, except for exposure to noise, which is unrestricted.  (TR 88).

The ALJ also identified evidence which he found inconsistent with Dr. King's opinion. Contrary to Plaintiff's assertion that the ALJ did not consider his gastrointestinal impairments and limitations, the ALJ considered them in full and referenced them throughout his opinion, including in weighing Dr. King's opinion.

A June 29, 2005 colonoscopy and GI consultation revealed "small internal hemorrhoids seen on retroflexion in the rectum" and status "post resection of the cecum and terminal ileum." (TR 274). Harshad Patel, M.D., noted Plaintiff's report that he had lost 22 to 23 pounds over the previous two to three weeks due to one to seven bowel movements per day. (TR 276). The doctor reported that Plaintiff's weight on June 29, 2005 was 204 pounds and his weight on March 14, 2003, when the doctor had performed a colonoscopy, was 184 pounds. (TR 277). A CT scan revealed no evidence of an abscess or inflammatory bowel disease. (TR 277, 344-45).

The ALJ correctly noted that another physician had identified Plaintiff's Crohn's disease as "stable." (TR 22). The ALJ found that treatment had generally been successful in controlling Plaintiff's Crohn's disease. (TR 22). In August 2005 Plaintiff underwent an examination with Bharti Sachdev, M.D., who noted Plaintiff's report that he had "felt better" after his bowel resection but that he reported chronic diarrhea five to six times per day. (TR 392). The doctor concluded that Plaintiff's Crohn's disease was "stable." (TR 394). The doctor also reported that Plaintiff was able to bend, dress and sit and that the doctor had "noted him stooping down to tie his shoes." (TR 393). Dr. Sachdev reported that Plaintiff had "no tender points of fibromyalgia." (TR 393). Range of motion in Plaintiff's neck and elsewhere was normal on examination in August 2005. (TR 393).

On July 15, 2005, David K. Vallance, M.D., who had treated Plaintiff from January 2002 through November 2005, reported that Plaintiff's Crohn's disease was "inactive." (TR 160). An August 2005 Gallium scan was negative. (TR 342). At that time Plaintiff was being examined for

11

possible Wilson's disease.  (TR 160).  In September 2005 Dr. Vallance reported that Plaintiff's Crohn's disease was "quiet."  (TR 159).  As the ALJ pointed out, a September 16, 2005 series of barium x-rays of the abdomen revealed evidence of the previous bowel surgery and showed a "[n]ormal appearing bowel."  (TR 16, 260).

On October 4, 2005 Dr. Patel reported that Plaintiff's liver biopsy revealed diffuse moderate macrovesicular and microvesicular steatosis and chronic hepatitis with mild piece-meal necrosis.  (TR 255).  Copper staining was negative.  (TR 255).  The doctor noted that Plaintiff denied any weight loss, Plaintiff was "being followed by Dr. Vallance for fibromyalgia" and that "apparently Dr. King and Dr. Vallance are thinking about placing [Plaintiff] on disability for his fibromyalgia."  (TR 255).  Dr. Patel noted Plaintiff's history of diarrhea with five bowel movements per date, and a history of migraine headaches, steatohepatitis and fibromyalgia.  (TR 255).  The doctor recommended a repeat hepatic profile and a trial of cholestyramine to improve the diarrhea.  (TR 256).

Plaintiff began treatment in 2006 related to his coronary artery disease.  (TR 104-23).  In April 2006 Plaintiff's cardiologist reported that despite a history of GI upset "with higher dose anti-inflammatories" Plaintiff was tolerating aspirin "quite well."  (TR 116).  On December 18, 2006 Richard M. Byler, M.D., reported Plaintiff's history of "three-vessel coronary artery disease status post stenting of the left anterior descending coronary artery and right coronary artery."  (TR 104).  Dr. Byler noted that Plaintiff was negative for acute anemia and his angina was noted as "stable."  (TR 104).  Records from November and December 2007 when Plaintiff treated at the Townsend Medical Center for complaints of fever and left ear pain make no mention of Plaintiff's Crohn's disease or related symptoms in the report of chronic conditions.  (TR 94-99).

12

The ALJ fully explained the weight given to Dr. King's opinion about Plaintiff's restrictions and ability to work and explained where the opinion was not supported by medically accepted clinical and laboratory techniques and was inconsistent with the evidence of record. The ALJ did not err in failing to adopt the January 2008 opinion. The ALJ's findings on this issue are supported by substantial evidence.

**3.     Whether The ALJ's Credibility Determination Is Supported By Substantial Evidence**

Plaintiff argues that the ALJ erred his credibility determination. Plaintiff argues that any "consideration of claimant's credibility should note that he is unable to take pain medications and anti-inflammatories often used by others because of his Crohn's disease." (Docket no. 7 p. 9). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. Both the ALJ's decision and a review of the records shows that the ALJ considered both the objective medical evidence in the record and considered the remainder of the record as required by the Regulations, to determine the credibility of the severity of Plaintiff's complaints of pain and other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

The ALJ gave specific reasons for determining that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not fully credible. SSR 96-7p; (TR 20). As set forth above, the ALJ fully considered Plaintiff's gastrointestinal symptoms with the objective medical evidence of record, including Plaintiff's history of fibromyalgia, coronary artery disease and Crohn's disease. (TR 21-22).

Beyond the objective medical evidence, the ALJ is directed to consider Plaintiff's activities of daily living, among other factors, in considering the severity of Plaintiff's pain and the ALJ did

13

so.  *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  Plaintiff had no limitations in personal care or hygiene and he engaged in some food preparation and laundry tasks.  (TR 60-61).  Plaintiff also reported that he watches his six children, takes care of their "routine activities" and is able to occasionally attend school activities.  (TR 20-21, 392, 458).  The ALJ noted Plaintiff's report that he shops with his wife and he spends most of his time lying on the couch and watching television.  (TR 21, 61-62, 460).  On December 18, 2006 Dr. Byler noted Plaintiff's report that on a "good day" he is able to walk a mile, but on a bad day, he cannot do much physical activity and that Plaintiff was going to go on the "south Beach Diet."  (TR 104).  Dr. Sachdev observed that Plaintiff was able to bend, sit, dress and stoop down to tie his shoe.  (TR 393).

The ALJ considered Plaintiff's treatment and medication.  The record shows that medication and treatments and therapies reduced Plaintiff's pain.  The ALJ pointed out that the Zanaflex was helping Plaintiff's fibromyalgia.  (TR 21).  In September 2005 Dr. King reported that Plaintiff's Zanaflex "works very well" and that Plaintiff had Lomotil prn for his loose bowel movements.  (TR 304).  In August 2005 Dr. Sachdev noted that Duragesic and Lidoderm as needed had addressed the headaches which were "gone" although the medications reportedly "put him to sleep."  Plaintiff reported that several physical therapies, Vicodin and Zanaflex had also relieved his pain symptoms.  (TR 392).  The doctor noted Plaintiff's report that using all his medications masks the pain "the majority of the time but not at all times."  (TR 392).

Despite Plaintiff's argument that he cannot take oral pain and anti-inflammatory medication due to his Crohn's disease, the record shows that Plaintiff has taken Vicodin Extra Strength, as many as four per day, and Zanaflex with no reported problems.  (TR 393).  In April 2006 Dr. Byler reported that Plaintiff had a "history of previous GI upset with higher dose anti-inflammatories but was recently started on aspirin by [Dr. King], which he is tolerating quite well."  (TR 116).

14

In considering Plaintiff's credibility the ALJ also relied on Plaintiff's report that he was losing weight due to frequent diarrhea, yet the record shows that his weight was increasing and he was advised to lose weight.  On May 26, 2005 Dr. King recommended weight loss.  (TR 310).  In May 2005 Plaintiff's weight was 220 pounds, in July 2005 it was 202.6 pounds, in October 2005 it was 205 pounds.  (TR 255, 306-09).  In 2006 Dr. Byler reported that Plaintiff had neither lost nor gained weight and his weight was recorded at 212 pounds.  (TR 105-06).

 The ALJ properly explained his credibility determination which is based on a variety of factors and it is supported by substantial evidence in the record.

**4.**  **Whether the ALJ's Findings At Steps Four and Five Were Supported By Substantial Evidence**

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so.  *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993).  The Sixth Circuit has held that hypothetical questions to experts are not required to include lists of claimant's medical impairments. *Webb v. Comm'r*, 368 F.3d 629, 633 (6th Cir. 2004).   Despite Plaintiff's argument to the contrary, the ALJ gave reasons for failing to adopt the severe restrictions set forth by Dr. King in January 2008 and the ALJ's RFC contains the limitations the ALJ found credible and supported by the record.

The ALJ concluded that Plaintiff has the RFC to perform "light" work further limited to standing, walking and/or sitting six hours in an eight hour work day, no use of ladders, scaffolds or ropes, only occasional use of ramps or stairs and only occasional stooping, crouching, kneeling and

crawling.[2]  (TR 19).  The ALJ has considered the totality of the evidence where the treating physician's limitations were not supported by objective evidence.  *Landsaw v. Sec'ty*, 803 F.2d 211, 213 (6th Cir. 1986).  The ALJ's RFC is consistent with the enhanced examiner's Physical Residual Capacity Assessment in which the examiner concluded that Plaintiff could lift and/or carry  twenty pounds occasionally and ten pounds frequently, stand and/or walk and sit for about six hours of an eight-hour day and is limited to only occasional climbing, stooping, kneeling, crouching or crawling. (TR 367-68).  The ALJ explained his evaluation of this state agency assessment.  (TR 19).

As set forth above, the ALJ's RFC is supported by substantial evidence in the record.  The ALJ presented all of the limitations of the RFC in his hypothetical question to the VE and the VE testified that such an individual would not be capable of performing Plaintiff's prior work, but that there are jobs available for a person with these limitations, which the VE cited in detail.  The ALJ properly relied on the VE's testimony to find that there are significant numbers of jobs available which Plaintiff can perform.  The ALJ's decision at step five is based on substantial evidence.

## VI.  CONCLUSION

The Court has considered the record in full and notes that "[i]t is the exceptionally rare case in which 'every piece of evidence points incontrovertibly towards a decision to deny benefits.'"  *See Flagg v. Comm'r of Soc. Sec.*, 2002 WL 373466, at *1 (E.D. Mich. Feb. 19, 2002).  The ALJ's

---

[2] "Light work involves lifting no more than 20 pounds at time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling or arm or leg controls."  20 C.F.R. § 404.1567(b)

The ALJ also concluded that Plaintiff did not have any mental limitations, despite a statement by Dr. King that Plaintiff has "short term memory impaired (sic) now."  (TR 19, 88). Dr. King gives no supporting diagnosis.  The ALJ properly obtained a Psychiatric Review in which it was concluded that Plaintiff has "No Medically Determinable Impairment."  (TR 376, 388).  The ALJ's finding is supported by the record and was not challenged by Plaintiff.

16

decision is supported by substantial evidence, it was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary Judgment (docket nos. 7, 11) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 10) should be GRANTED and the instant Complaint DISMISSED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 16, 2011             s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE

17

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel

of Record on this date.

Dated: February 16, 2011          s/ Lisa C. Bartlett
                                  Case Manager

18